The case this morning is number 2012-1269, Biosig Instruments v. Nautilus, on remand from the Supreme Court. Mr. Hume. I'm sorry, Mr. Harris. Mr. Harris, as you begin, one of the issues that we had suggested discussing with us related to whether the final decision is to be made here or remanded to the trial court, would you, as you proceed, if there are disputed facts or issues that require evidence, if it's convenient, mention them to us so that we will appreciate where the decision should lie. Thank you, Your Honor. Okay. Proceed, Mr. Harris. May it please the Court, my name is Mark Harris and I represent Biosig Instruments. When this case was last before this panel, the Court looked at the intrinsic and extrinsic evidence of the patent and came to the conclusion that a skilled artisan would understand the meets and bounds of the invention. Since that time, of course, the Supreme Court has issued its decision, but there's nothing in that decision that is a major part of this Court's analysis the last time. First, the Supreme Court did not materially change the test for definiteness from what this Court actually applied the last time. And second, the record, of course, has not changed at all. For that we… Let me ask you, the Supreme Court said, we hold that a patent is invalid for indefiniteness if its claims read in light of the specification delineating the patent and the prosecution's history fail to inform with reasonable certainty, etc. Now, they're focusing there on intrinsic evidence, the specification, the prosecution history. Do you read that as a direction that extrinsic evidence cannot be considered? No, I don't, Your Honor. It is true that at footnote four, the Court references the Lekman Declaration and the experiment by Dr. Galeano, I guess. But I'm just wondering if one should take this as a direction that we can only consider intrinsic evidence. No, I don't think so at all, Your Honor. First, for the reason that Your Honor mentioned, the Court went out of its way, actually, to describe some of the research assistant who was able to build the entire device and test it within two hours. But more than that, the Supreme Court also referred back to its decision in Markman, which mentioned that expert testimony would often be extremely important… In claim construction. In claim construction, but I think the purpose of mentioning it here was that the same would be true in a definiteness analysis. The essence of the Supreme Court's test was that there were basically two main points. One is that the question is what the skilled artisan at the time of filing would understand, and secondly was the reasonable certainty standard. Both of those things are exactly what this Court did the last time. I'll just read a quote from the panel's decision last time. The Court said that the 753 patents claim language specification and the figures illustrating the space relationship between the live and bounds of this disputed term. In fact, this Court gave… the majority gave two different reasons for coming to the conclusion last time that the patent was definite. First, it simply looked at the claims, the diagrams, the specification, and found that there were intrinsic parameters concerning what the spacing had to be. It had to be greater than zero so that the electrodes didn't collapse and had to be less than the width of a hand in order that the user could use it. It didn't even turn to extrinsic evidence or the declaration of Dr. Lechtman until it got to the second step, which was to say that the functional limitation also shed additional light, those are the Court's words, shed additional light on the meaning of space relationship. Is it your position that this case can be decided focusing solely on the intrinsic evidence, mainly the claims and the specification, without looking at whether or not it's extrinsic evidence, the material from the reexamination proceeding, and I guess it was the Ulanis declaration? Are you saying, leaving aside what those items are, one can just decide it based on the specification of the claims? Yes, we do think so. And in fact, that's what the majority held last time. There were clearly two separate steps to the analysis, and the first one was that the inherent parameters provided by those intrinsic materials were sufficient. But in any event, I do want to mention that the extrinsic materials, the expert reports that were submitted, the purpose of those that were being submitted and the purpose of the Court looking at them was not to provide additional facts for the Court. When you say extrinsic materials, you're viewing all of that, including the material from the reexamination proceeding as extrinsic. Well, it's a little bit unclear how the panel treated it last time. The panel, I think, said that treated the Lechtman declaration, which was submitted as part of the reexamination proceedings, I think it called it intrinsic evidence, or it cited a case from the Federal Circuit where it was treated as intrinsic. And then later on, it referred to Yanulis as extrinsic. But again, I'm not sure from our standpoint it matters very much. Either way, the evidence was all one-sided. It all pointed to the fact that a skilled artisan could understand, did understand in 1992, the meaning of space relationship. There was nothing from the other side, from Nautilus at all, to contradict or rebut that evidence. Mr. Harris, let's talk about reasonable certainty. What do you think that means? Well, the Supreme Court made clear reasonable certainty does not mean perfect certainty or no possibility of doubt, which was the position that Nautilus had taken in the Supreme Court. That's a start. That's a start. Reasonable certainty, I think, means that there's room for some gray areas around the edges. But if a skilled artisan reading the patent has a well-founded basis for concluding that he or she understands what's included or excluded, that's sufficient. Well-founded? Is that reasonable certainty? I don't want to say that that's the legal definition of it. I'm just offering that as I think reasonable is one of those words that lawyers use and courts use. I think it takes into account all of the skills and the background of the person who's making the determination. That isn't very precise, is it? Are you saying more likely than not, as has been cited to us in some past decisions, that is 51 percent? Or that the conclusion that the court wishes to draw can be substantiated by logical argument? I think I would say that it does mean it has to be at least a preponderance. I just want to make clear, though, that our opinion is that there's really no doubt here at all, because nothing was submitted on the other side to suggest that this was not clear. And in fact, the court came to the conclusion last time, the panel looked at all the materials last time, and said that a skilled artisan would understand what the meets and bounds were. Well, just to round this out, you're saying that however we define or fail to define reasonable certainty, you should prevail. Yes. That's correct. So I think what you want to say is reasonable certainty is anything that's not unreasonable. That's what you want to say. That sounds fair. That sounds fair. So let me ask you about Exxon from 2001, where the court said if the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefinite grounds. Under the reasonable certainty standard, can reasonable persons disagree and a claim be found not indefinite? I think it's telling that the Supreme Court, although these issues were discussed at oral argument, came out with a standard that was somewhat vague and didn't nail down exactly. They came out with no standard, and they weren't particularly taken with the Exxon statements of this court. No, that's correct. Well, the other prior attempts to resolve particular cases with particular descriptions, there has been a sense that the obligation on remand is to somehow add as much precision as language can add to this relatively vague standard. We're looking for your help. I guess I would disagree with that slightly, Your Honor. I don't think the Supreme Court expected or thought it was necessary for this court to define with more precision what reasonable certainty means. What the Supreme Court left for this court to do, and in fact instructed this court to do, was to apply that standard to this case. What standard? The standard of reasonable certainty. I also want to point out, the main critique that the Supreme Court had for the incisively ambiguous standard was not that it was too far over to one side of the range. Maybe that was true. But the main critique they had was that they thought the focus was wrong. The focus was on using the term incisively ambiguous, a lower court may misconstrue that to mean that what matters is what a court, after the fact, thinks the words mean, whereas the focus should be on the skilled artisan. Mr. Harris, it's interesting that, picking up on what Judge Newman and Judge Wallach were saying about reasonable certainty, during the time that this case was under decision, if you will, before the Supreme Court, we decided a case in Cora Technologies, 744, Fed Third, 732, and at 737, we noted that the Supreme Court had this case before it, and in that case, Judge Toronto addressed the indefinite issue. He said, we don't need to weigh in on what the Supreme Court will or will not say, but he said, the test he applied in that case was, the claim language and the prosecution history leave no reasonable uncertainty about the boundaries of the terms at issue, even considering certain aspects of the specification that could consider confusion when read in isolation. So this was a decision in March of this year, while the Supreme Court was working on its decision in our case, but obviously before our revisiting here today. And I'm wondering what you think about that Yes, I don't have the language in front of me, but I heard how your Honor just read it. I think it's difficult to put greater parameters on the word reasonable. Reasonable is a word that we see in many areas of law, and I think by design, it's a little bit vague as to what's included and what's not. I think the key thing is that there has to be a reasoned basis as to why the skilled artisan would come to that conclusion. The skilled artisan can't, based on a whim or something else, come to the conclusion as to how he or she would read the patent. From our standpoint, that's the key idea here. Again, I don't want to repeat myself, but we think that the Court does not need to get into deciding what the precise standard is beyond reasonable, because here all the evidence goes one way, and in fact all that Nautilus has submitted are attorney arguments in 2014 as to what it thinks was unclear about space relationship. Nothing about what a skilled artisan. In fact, Nautilus really falls into exactly the trap of what the Supreme Court said shouldn't be done, which is to offer only arguments that are not tethered to what an actual skilled artisan would think. I guess I see my time is running down. I just want to quickly, before I reserve some rebuttal time, I just want to answer Judge Newman's question from the beginning, which was who should decide this case. This Court, I believe, should decide it for three reasons. I'll just run through them very quickly. First of all, the Supreme Court's instruction to this Court was for the Federal Circuit to decide the question of whether this patent meets the standard that they articulated. That's explicit in the end of the first paragraph of the Supreme Court's decision. Second, under the current understanding, which is that definiteness is a matter of law, and it's reviewed without deference, which is what the Court said the last time, there's really not much gain in sending it back to the District Court, because it's going to be reviewed de novo, without deference, by this Court. All it's going to do is just have it come right back here. Third of all, I don't think there are any new facts or new decisions, new factual questions that need to be answered. All of that was briefed and was presented the last time. Nautilus had every incentive last time to present whatever evidence they had, and they didn't have any other-than-attorney arguments as to what space relationship means. In fact, the District Court would be in a worse position than this Court to say whether or not this patent is valid, because the District Court is going to be bound by the previous decision by this Court, to the extent that aspects of it weren't overturned by the Supreme Court. It's going to have to figure out what to make of conclusions by this Court, such as that the functional limitation sheds additional light on, or is highly relevant to the meaning of space relationship. The Court's going to have to wade through all that and figure out what's open and what's not open. It makes much more sense for this Court to decide it in the first instance. I'd like to reserve the remainder of my time. Can I ask one question? Yes. I had a question, too. Would you go first? Okay. This is really sort of a housekeeping type of question. Obviously, if we decide the case and affirm the decision of the District Court, the case is over. If, however, we agree with your position and we reverse on the indefiniteness issue, it goes back. Is there anything pending there other than infringement? Are there any other validity issues that were put on hold pending the indefiniteness question? I believe that Nautilus had also made other threshold arguments concerning anticipation and obviousness and the like. So I believe there are still other issues that are there. I'd like to reserve the remainder of my time for the rebuttal. That was my question, too, so thank you for asking it. Okay, we'll save your rebuttal time, Mr. Harris. Mr. Vandenberg. May it please the Court. Before turning to the various questions about the standard, I'd like to have at least 60 seconds to sort of frame what we see as the ambiguity in this This claim recites a prior art circuit combined with a desired result, the desired result being that the muscle signals detected on both hands will be equal. What is unclear is what ways of achieving that result with this circuit are covered. It's possible that this claim viewed in 1992 by a skilled artisan covered all possible known and future ways of achieving that result of equalizing EMG signals with this prior art circuit. That would be true if the term spaced relationship was a broad term that simply meant any spacing, because if it meant any spacing with no functional requirement built into the term, then all we have is a claim that recites a prior art circuit coupled with the desired result. On the other hand, it's possible that this claim covered only one narrow way of achieving this result with this circuit, namely what Mr. Lexman described 15 years later, you adjust the spacing of the electrodes while looking at an oscilloscope until you have the results you want. That's a possibility. A third possibility is the claim covers four ways of achieving the desired result with this circuit, namely you adjust four variables, any of four variables, only one of which spacing is mentioned in the claim. So that is the ambiguity that we have asserted. The scope of the claim is ambiguous because it is unclear if the term spaced relationship includes inside the term a functional requirement that the spacing cause the equalized EMG. And in fact, the concurring opinion in the prior vacated decision pointed this out and pointed out that the majority presumed that not only did the claim have this functional limitation, but that the term spaced relationship has the functional limitation built in, and the concurring opinion found no support for that in the claim. So with that framework, to turn to your Honor's questions about what the Supreme Court did. Well, there's a question about that framework because we're talking about claim construction and infringement as well as whether this claim is particularly indefinite. And from what I heard you say, even if the accused structure, none of which is before us, but even if it were identical with the drawing in the patent, that the claim would nonetheless necessarily be deemed indefinite because it could cover structures other than that which is specifically and exactly pictured? It's certainly the claims indefiniteness is not dependent on which alleged infringer may be before the court. So I would submit that even if, which is not this case, a party had copied the picture in the patent and it conceded infringement, which is not this case, even if that were true, the claim would be definite or indefinite under the statutory mandate equally. It would not be relevant to that. And that's part of the problem because it does look as if what led this court to some of the broad language which has been criticized by the Supreme Court was in order to cross that hurdle and to get to the real stage of what's at issue. And that is, in fact, what is the relationship between this saying that if there is a reasonable way, let's not say any way because that's behind us, but a reasonable way of construing a claim so that you don't know what its limits are, it's indefinite always? We would not say that. We would say that when the court said reasonable certainty, what it meant, and some of these terms themselves could be subject to further scrutiny, but looking at the opinion, the claim needed to be clear, it needed to be unambiguous, and it needed to be precise, but not more precise than the subject matter permits. The Supreme Court did not use that exact phraseology. The Supreme Court said there's allowed to be a modicum of uncertainty, there's limits in the English language, and it said absolute precision is not required. We would submit that this court's precedents back from the 1980s and 1990s, during that period, one of the requirements that this court imposed on claims under 112.2 was that the claim be as precise as the subject matter permits. That worked both ways. Sometimes that helped the patent owner survive a claim because the claim, in fact, was as precise as the subject matter permitted, but sometimes it led to invalidity because it was possible to make the claim more clear. Here, if that were applied, it is clear that it would have been easy for this patent to have clarified the ambiguity we're speaking of. It could have, in the claim, had a clear, expressed link between the claimed result and some structure in the claim. But they say that in the claim. Well, the claim does not have an expressed link. It says, whereby, after a lot has been recited. It doesn't tie it expressly to space relationship. They could have defined the term space relationship. That is true, but that does not answer the question, the ambiguity, of whether or not the term space relationship itself has a functional limitation or a functional requirement built in. They could have defined the term space relationship in the specification. They didn't. They could have given examples of configurations that fit inside the claim and examples that fit outside the claim. There's only an example. There's a picture. There is a picture, Your Honor, yes, but there are no dimensions or relative dimensions in the patent to specify what range, if any, is allowed on the spacing. You can't take judicial notice of the size of a human hand? Well, the problem here is that one interpretation, before the re-exam, the best interpretation, but it was unclear, was that space relationship meant any spacing. If one looks at the specification, they refer to things like spaced or spaced apart. They never suggest that the amount of spacing affects the result. And the original examiner, as we've noted in our remand brief, the original examiner said the spacing doesn't appear to be critical. It seems to be a design choice. So, before the re-examination, if one had to guess at the best claim construction, the best guess would have been that spaced relationship means any spacing, and this claim covers any possible way of achieving… But are you telling us the spacing is critical? I don't recall any evidence provided to that effect. Well, post re-examination, the best construction perhaps shifted to the functional limitation, which the majority of the court, in the vacated opinion, found that spaced relationship itself had a functional requirement built in. And the re-examination statements of Mr. Lectman certainly would support that. And the person of skill in the art knows that this circuit is prior art. They know that Fujisaki had the identical circuit. Lectman said that Fujisaki didn't achieve the desired result. So, the artisan, knowing all that, looks at this claim, prior art circuit that supposedly doesn't achieve the result. The claim says it achieves the result. What is there in the claim that might suggest how that is achieved? What way is that achieved? The only possible term there that might have caused that is spaced relationship, because that's not a term of art. It's not defined in the specification. And therefore, there are clues that would support the view that the majority ultimately reached in its opinion, and there certainly are clues supporting the concurring opinion view of it. But what matters here is not… Half the battle here is defining the correct issue. The issue before the court is not what is the best claim construction, viewing matters post hoc, taking into consideration the re-examination. The Supreme Court rejected that approach. That is one of the aspects of Exxon and both star scientific cases. The question is we have a claim construction here that the district court came up with and that we looked at in our original opinion, and it's noted in the Supreme Court opinion, is the question whether accepting this claim construction, one is left with indefiniteness because one is skilled in the art, cannot tell based on that construction with reasonable certainty the bounds of the invention. Absolutely not, Your Honor. That is the approach that was taken in Exxon and in star scientific, both decisions there and by this panel, to construe the claim first and then ask if the claim as so construed gave enough notice to the skilled artisan. And the Supreme Court rejected that claim construction first approach. But how do you, I mean you have to, you've got a claim, there's a claim there, and the question is where do you start? You have to look at the claim. But you don't first go and proceed and get the right answer and then step back with that hindsight and ask was the right answer clear? That's the post hoc approach that the- What in your view, I'm sorry to interrupt you, but time is fleeting. In our situation here, we have a claim construction that neither party disputes. What do you say is the analytical framework that we should pursue? I mean, I know you want us to conclude that the claim is indefinite, but how would you, consistent with what the Supreme Court said, and maybe consistent with what our ANCORA decision said, how would you approach this case in terms of your decisional process if you were on the bench? First- Bear in mind there is a claim construction out there that no one disputes. Well, first we did dispute the claim construction in our opening appellate brief, but let's assume hypothetically that it was undisputed. We would say that's not relevant. We would take the approach the interval licensing took. You take the perspective of the person of skill and the art. You look at the original intrinsic evidence as the primary evidence. So you look at the original specification, the claims as issued, and the original prosecution history. You do not look at post-issuance events such as judicial claim constructions, re-examination or re-issue prosecution history because that's skilled artisan in 1992. That's the person who matters here. That's the person who is either going to go out and invent a better solution or is going to look at the claim, see a zone of uncertainty, and go home and watch television. That's the person we care about. That person does not have a crystal ball. That person does not know how the trial court will construe the claim 15 years later or how this panel will construe the claim later. So you do not, if there's a claim construction for other reasons, that's fine, but that shouldn't bias the analysis. In your opening brief at page 8, you say the Supreme Court's decision requires a more demanding analysis, and then underneath that you say the Supreme Court held that Section 112 mandates clarity and precision. And I wrote a vulgar note next to it and went back to the Supreme Court decision where they say the definiteness requirement so understood mandates clarity while recognizing that absolute precision is unattainable. Now, I think that walks a different route than your heading does. You're not taking the position that 112 mandates clarity and precision. You're taking the position that the person of skill in the art has to be able to deal with it in a reasonable fashion, right? No, Your Honor, we'd stand by the heading that mandates clarity and precision, even though they say absolute precision is unattainable. Well, the very beginning of the opinion refers to the statute's clarity and precision demand. This is at page 2124 of the opinion. The Supreme Court opinion clearly distinguishes between particularly pointing out and distinctly claiming. It not only has to be clear, it has to be precise. However, Your Honor, as I said— Within the ambits of the English language. Yes, and within the ambits of the subject matter. And therefore, if it was undisputed that spaced relationship was a functional limitation, had functional requirement built in, then it is certainly possible in some other case that one could turn to the oscilloscope as enablement analysis and determine that people of skill in the art here could use that oscilloscope to figure out what spaced relationship would be in a particular setting, such as the controlled environment case and other cases here. That is not this case. It is not undisputed. It was not known from the get-go that spaced relationship was a functional limitation in and of itself, had a functional requirement. As the concurring opinion indicated, the majority presumed that there was a functional limitation built in to the term spaced relationship. Our position is the person of skill in the art would not know. It was like 52-48 if spaced relationship had a functional requirement built in. If spaced relationship did not have a functional requirement built in, then the skilled artisan who comes up saying he has this new material that he thinks will create equal EMG signals on both sides, no matter what the spacing is, at the Fujisaki spacing, that would infringe. Are you saying that a person reading this specification, looking at the drawing, seeing where the electrodes are placed, and reading all of the description of the neutralization and the grounding and so on, would not reasonably, with ordinary skill of someone in this field, be able to design? We have the evidence that an apparently young person of moderate skill was given this specification. Routine equipment, and within a couple of hours, balance the electrodes and whatever it is that would normally follow from knowing that you need to have them neutralize each other. Your Honor, on this record there is evidence to support that. That is enablement. That says that the skilled artisan, if they wanted to take a license and practice under this claim, they could figure out one way of doing so. That is completely the different issue than what we have here. Our skilled artisan doesn't want to practice within the claim. But is enablement conceded, or did you just not reach it in the course of the summary judgment procedures? There was no ruling by the trial court on that issue. Was it raised at trial? On that issue of enablement. There were certainly arguments there, and BIOSIG is still making that argument, which we submit is illegally not relevant. Because again, the skilled artisan doesn't want to practice within the claim. They want to practice just outside the boundary of the claim, and they need to know where that boundary is with reasonable certainty, or else there's going to be the zone of uncertainty. And will you help us to define reasonable certainty? Yes, and one aspect of it would be what interval licensing quoted from every penny counts trial court decision. What's the site? Interval licensing? The interval licensing, was that cited in our brief? It may not, but it was interval licensing versus AOL, decided September 10th, 2014 by, I believe, judges Toronto and Chen. And I have a paper copy. May we have a copy? And so there they quoted every penny counts, which was quoted by the Supreme Court, and they said if there is no informed and confident choice between two possible constructions. So that panel adopted that language. The Supreme Court adopted that language. So you would accept more likely than not as adequate? No, not at all, Your Honor. The point is not whether or not one construction is clearly better than the other. That's not the issue. The issue is avoiding post hoc analysis, avoiding hindsight of coming up with the right construction, looking at it from this point of the artisan without a crystal ball, are they faced with a genuine ambiguity? The Supreme Court was clear that claims cannot be ambiguous. The Supreme Court said that one of the problems with this court's Exxon decision was that it tolerated some ambiguous claims. There's no way of reading the Supreme Court decision we submit that would allow any ambiguity, genuine ambiguity. So if there's any ambiguity, that ends it? Even if there is a reasonable, more likely than not, meaning? Yes, Your Honor. That's the position of the Supreme Court. They said two things on that. No, they didn't say that. They asked us to figure it out. Well, they made two references to ambiguity. One, they said that there was evidence that there was an economic incentive to inject ambiguity in the claims, and they said it is right or suited, I don't have the right language, but it is right to end that temptation. That certainly suggests that they're not allowing ambiguous claims because they want to stop the temptation to add ambiguity. And second, they said one of the problems with the insolubly ambiguous standard was it allowed some ambiguous claims but not others. That did not comply with the statute. If I may speak to the remand issue briefly. So what you're telling us, I want to make sure I understand it, is that the question is, is it ambiguous? So the one looking at the patent would not know the bounds of the invention. Is that it? That's half of it. The other, it has to be unambiguous, but it also has to be as precise as the subject matter permits we submit. Those are two different criteria. They both have to be met. And to do that, you look at the intrinsic evidence, the language of the patent, and the prosecution history, correct? Primarily, but in answer to the question, you can look at extrinsic evidence, so long as the extrinsic evidence is not injecting some hindsight, it's not adding a crystal ball to the analysis. If it is saying, if the extrinsic evidence says, oh, this term of art, spaced relationship, that had a clear meaning in the art, anyone in this art reading this would know that it was not a functional requirement, et cetera, that type of extrinsic evidence is perfectly fine. One final question. The original prosecution history here, does that, in your view, shed light on this question or not? Yes. The original prosecution history supports the broad view of spaced relationship the non-functional view, and if all the artisan looked at was that prosecution history, where the examiner said the spacing is not critical, appears not to be critical, the placement appears not to be critical, that's all they looked at, they would come away and think, oh, this claim covers all possible ways of achieving this equalization result with this circuit. Now you said earlier, when I mentioned that we had a claim construction here, you said, in your view, that was the wrong way to look at it. What is the right way to look at the language of the claims in the patent, in your view, to decide the case? Well, one does apply the appropriate interpretive tools. This is very much like a Chevron analysis. So we have to consider the language of the claim. Absolutely. The starting point is the language of the claim and the specification and the original prosecution history, and one applies the appropriate interpretive tools. What one shouldn't do, according to the Supreme Court, when they said they rejected a post hoc analysis, one shouldn't, as in Exxon, struggle, struggle, struggle, come up with the right result, the best claim construction, and then ask, is that claim construction clear? That is what the Supreme Court rejected. And on the remand? Well, I think I've got an answer from what Jack Schultz asked you, but for a while there I thought you were saying that we could relieve the district courts of the burden of markments, since they wouldn't have to worry about claim construction, they would just be with the facitas and we could take evidence, they could take evidence. It seemed like you were going down that road. No, Your Honor, I'm sorry if I'm not clear on the point. Well, no, I got your answer from what you said to Jack Schultz. Okay. So I think the distinction is to not inject hindsight. I mean, the Court rightly is concerned about hindsight in the obviousness analysis, but here if one followed the old approach of construing the claim and then asking was that sufficiently clear, that is injecting hindsight into indefiniteness, and we submit the Supreme Court rejected that. On the remand, we essentially agree that the Supreme Court asked this court to reconsider. It is a question of law. The Supreme Court noted that BIOCIG had raised no fact dispute. There was no issue here that the trial judge got it wrong because there was a genuine issue of material fact, and we submit that the trial judge opinion was correct because of this core ambiguity as to whether space relationship itself is a functional limitation, as the majority found earlier, or does not have a functional requirement built in, as the concurring opinion found earlier. Okay. Thank you, Mr. Venn. And you say, Mr. Member, that extrinsic evidence can be considered in this case if, and you would underline if, it's used in the right way. That's what I took from your statement a bit earlier. Yes, Your Honor, and not the only reason we say that, but one reason we say that is as we brief, we submit that the extrinsic evidence in this case supports us because their own experts, one said space relationship was broad, one took the narrow view, and the third took both views. So we submit the expert testimony, extrinsic evidence supports our view that the intrinsic evidence showed it was ambiguous. So you think the extrinsic evidence is insolubly ambiguous? No, I wouldn't say that, Your Honor. Okay. All right. Thank you, Mr. Vandenberg. Thank you. Would you enlarge Mr. Harris' time by the amount we've run over? Thank you, Your Honor. A few points. What Mr. Vandenberg just spoke out, I think, is exactly what the Supreme Court said the test wasn't. The test is not perfect notice. The test is not whether or not the inventor could have, in retrospect now with 20 years hindsight, could have written something else that would have been clearer. The test is not whether there is any possible ambiguity. None of those things are the test. The Supreme Court rejected all of those positions. The Supreme Court held the test was reasonable clarity, and the test for that is based on the materials that were available at the time. It's not based on scientific material that may shed light on what a skilled artisan would have thought back then. If anybody is using 20-20 hindsight, I would argue that it's Nautilus here, because what Nautilus is doing is arguing based purely on lawyers' readings of what they think the claim means many, many years after the fact, and trying to say that as a result of that, without tethering it to any skilled artisan's thinking process, that the claim must be ambiguous. Let me make this very specific. In their reply brief before this court, I believe it was the first time that Nautilus raised this idea, which was just mentioned, which is that what's ambiguous about this claim was that a skilled artisan wouldn't know whether or not he could try to develop a new material, which would somehow intrinsically, their word, or inherently detect equal EMG signals. That substance, as far as we know, defies the laws of physics. Dr. Lechtman explained in his declaration that the EMG signals, their amplitude and phase, depends on the size of the electrode and also the spacing, how much of the hand touches it, and also how far apart the measurement is. So we're now supposed to take the view that because 20 years ago, it should have been foretold that somebody might, down the road, invent some substance, which still doesn't exist as far as we know, goes against what we know works about physics. Because that wasn't specified, that that wasn't included, now the patent's invalid. That seems to me to be exactly what the Supreme Court doesn't want to have happen, which is lawyers now having every incentive in the world to come up at every phase of the litigation with a new possible ambiguity or unclarity that the lawyers come up with as being the reason now to invalidate the patent. That's not the way the process is supposed to work. This court did examine the claim last time, the majority did. The majority did not focus on the construction. The majority, and I read the language before, and there were other passages where it's quite clear that the majority looked at the claim language itself and found that the claim language was clear enough that the skilled artisan would know the relationship between space relationship and the end. And as Judge Newman, as you mentioned, there was evidence, undisputed, not only that Dr. Galliano's assistant was able to build this in two hours, but also that the assistant was able, understood how to read the claim in order to achieve that result. How did that work? I don't want to go outside the record. Was the assistant supposed, after that information was filed, was the assistant who did that two-hour experiment or whatever you want to call it, was that pursued or was that just put into the record? I don't believe that it was. I'm not positive about that. My understanding is that it only came up in the course of Dr. Galliano's description of her conclusions that the language was clear and was certain enough for a skilled artisan to understand. She gave the example of what her research assistant had been able to do. I don't believe he was. Okay, was she deposed? No, I don't believe she was deposed either. I believe, again, Nautilus brought in, Nautilus made the summary judgment motion. There wasn't even, you know, this was all done on the basis of declarations that were submitted, which this court is in as good a position to read as the district court was. What's your comment on Mr. Vandenberg's, he says the ambiguity here, and hopefully I'm not misstating, but he says that the ambiguity here lies in the fact that one would not know whether to be guided by functional consideration or just the structure. And I hope I'm not doing a disservice to his position, but you heard it. If I have it right, fine. If not, recall it in answering my question as you understood it to say it. The majority said last time that it found that both the intrinsic parameters, the size of the hand, as well as the functional limitation, showed that the claim language was definite. The court said multiple times in multiple ways that the functional limitation shed light on, was highly relevant to, and contributed to the end. So Mr. Vandenberg had said a few moments ago that this was a situation where all that the patent disclosed was simply some desired result without structure. That's just absolutely not true. The structure was given. The structure explained the elongate member, explained that there were going to be electrodes, explained what they were supposed to do, which was to receive signals of equal amplitude and phase, how they were going to feed into the differential amplifier in order to cancel out EMG signals. The only part that it didn't go into more detail about was something that the undisputed evidence shows everybody already knew, which was the way to move the spacing of the electrodes in order to get equal signals from, equal EMG signals. The evidence showed that using an ordinary oscilloscope that existed back in the early 90s, it would be quite simple to figure out when the spacing was accomplishing the end. Was this issue raised in the re-examination proceedings? Which issue precisely? The question of indefiniteness. In the re-examination proceedings. I don't believe it was, I'm not positive, I don't believe it was phrased as an indefiniteness issue. I think the question was whether or not this was distinguished, this invention was distinguished enough from Fujisaki to represent something that was new. I don't believe it was phrased as indefiniteness. Well, whether the claims were sufficiently precise to affect that distinction? Whether or not there was, yes, whether or not the claims represented some kind of an inventive advance over Fujisaki. And with Dr. Lechtman, his evidence and others explained that yes, there was an important difference, which was that the Fujisaki invention didn't seem to take into account at all the notion of EMG cancellation, which is the very thing that caused the devices before Dr. Lechtman's advice came on the scene to not work very well in terms of detecting heart rate. Before he found a way to cancel out EMG signals, they were interfering with the heart signal that was coming through. And the Fujisaki invention never mentioned EMG signals or their cancellation as being important. The design of it seemed to reflect that no understanding of that was important. And in fact, the testing, which again was never contradicted, showed that it didn't work very well. Just as a fact outside the record, commercially speaking, the Fujisaki invention didn't work. It didn't sell. So we think that that's also a red herring. There was a clear difference between the two inventions, and it was spelled out, the patent examiner, who also is a person skilled in the art, confirmed what biopsy experts had said. Are there no further questions? Any more questions? Thank you. Okay, thank you, Mr. Harris, Mr. Badenberg. The case is taken under submission. That concludes this morning's argument. All rise.